UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:17-cv-20766-JLK

SHARON D. PEPPER, an individual,
on behalf of herself and all others
similarly situated,

    Plaintiff,                                                CLASS ACTION

vs.

GARCIA PAEZ, P.A., a Florida professional
association, and JOSEPH A. GARCIA,
an individual,

    Defendants.
_____/

**MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff, Sharon D. Pepper, an individual, on behalf of herself and all others similarly situated ("Class Representative"), pursuant to Rule 23, Federal Rules of Civil Procedure, by and through her undersigned attorney ("Class Counsel"), hereby respectfully moves this Honorable Court for an order granting final approval of the Class Action Settlement Agreement in this matter, and in support would show as follows:

1. In the instant action, the Class Representative filed a Complaint against Defendants, Garcia Paez, P.A.and Joseph A. Garcia (collectively "GARCIA PAEZ"), asserting that GARCIA PAEZ violated the requirements of 15 U.S.C. §1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA"), by *inter alia* failing to properly inform the consumer as to the consumer's rights for debt verification in a manner which was not reasonably calculated to confuse or frustrate the least sophisticated consumer in violation of 15 U.S.C. §1692g.

2. After extensive settlement negotiations, the parties reached a Class Action Settlement Agreement ("Settlement Agreement"), a copy of which has been previously filed with the Court.

3. On October 30, 2017, this Court entered a Preliminarily Approval Order of the Class Action Settlement and setting a fairness hearing on for final approval of the settlement ("Preliminary Approval Order") [DE 10].

4. In support of the instant application, the Class Representative has filed the following declarations/affidavits:

(a) Affidavit of Bailey Hughes, Case Manager, First Class, Inc. ("Settlement Administrator Report"), and

(b) Declaration of Robert W. Murphy, Esquire ("Class Counsel Declaration").

5. As detailed below, the Settlement Agreement is fair, reasonable and provides substantial benefits to the Class and should be given final approval by this Court in all respects.

## MEMORANDUM OF LAW

### I. INTRODUCTION

#### A. *Procedural History*

The Complaint of the Class Representative alleges that GARCIA PAEZ used collection notices that violated the operative provisions of the FDCPA. In particular, according to the allegations of the Complaint, GARCIA PAEZ used a collection letter that failed to provide an effective and non-confusing disclosure of the right of the consumer to debt verification, in contravention of 15 U.S.C. §1692g.

Class Counsel conducted a substantial investigation as to the factual and legal merits of the action. The Parties have fully researched the legal issues raised by this case prior to settlement.

The Parties engaged in mediation followed by settlement negotiations that lasted several months. In conjunction with these negotiations, the Parties exchanged information and documents relevant to the discussions. Through this process, the Class Representative acquired sufficient knowledge and information to adequately assess the merits of the settlement. After reaching a settlement in principle, the Parties negotiated the detailed final terms of the proposed Settlement Agreement now before the Court.

### *B. Terms of Settlement*

Pursuant to the Settlement Agreement, the Parties have stipulated for settlement purposes only as follows:

**Settlement Class.** The Settlement Class consists of:

All persons (i) to whom letters ("Collection Letter") in the same or substantially similar form as Exhibit "A" to the Complaint were sent (ii) in an attempt to collect a debt which, according to the nature of the creditor or the debt, or the records of the creditor or Defendant, was incurred for personal, family, or household purposes, (iii) which were not returned undelivered by the U.S. Post Office (iv) during the one year period prior to the filing of the Complaint in this action through the date of preliminary approval of this settlement [Settlement Agreement - ¶ 29].

**Payments to Class Members.** GARCIA PAEZ will provide monetary relief to Class Members, as follows:

> 30.   Relief to Class.  Within thirty (30) days after entry of the Final Order, Garcia Paez will establish a fund ("Class Fund") with the Settlement Administrator from which each Class Member who has not opted-out of the Settlement shall receive a check in the sum of One Hundred Twenty-Five Dollars ($125.00) ("Settlement Check") . . .

To the extent that there are any funds from un-delivered, un-cashed, or expired Settlement Checks, an amount equal to the amount of such uncashed checks will be paid over as a *cy pres* award to Class Counsel to be distributed to the National Consumer Law Center, subject to Court approval.

[Settlement Agreement - ¶30].

**Payment to Class Representative.** The Class Representative shall receive an incentive payment in the sum of Three Thousand Dollars ($3,000.00) for serving as Class Representative in this action. Such payment shall be made separate and apart from the Settlement Check described above [Settlement Agreement - ¶30].

**Costs of Settlement Administration.** The costs of the Settlement Administration through First Class, Inc. ("Settlement Administrator"), including but not limited to the costs of printing and mailing the Notice of Class Action and Proposed Settlement of Class Action ("Class Notice"), processing claim forms, and issuing checks to Class Members and managing the Settlement Fund, shall be paid separately and directly by GARCIA PAEZ [Settlement Agreement - ¶32].

**Attorneys' Fees, Costs and Expense.** Pursuant to the Settlement Agreement, the Parties agreed that the reasonable attorneys' fees, costs and expense for Class Counsel shall be paid by GARCIA PAEZ in an amount to be agreed upon by the parties or to otherwise be approved by the Court at the time of final approval [Settlement Agreement - ¶31].

*C. Details of Settlement Administration*

Pursuant to the Preliminary Approval Order, the Court approved the proposed Notice to Class ("Class Notice") in the form of Exhibit "C" to the Settlement Agreement and directed the Settlement Administrator to mail the Class Notice by first class mail to the Class Members at their last known address. The Class Representative has filed the Affidavit of Bailey Hughes of First

Class, Inc. ("Settlement Administrator Report") which details the Settlement Administration process.

Pursuant to the Preliminary Approval Order, notice was mailed on November 29, 2017 ("Initial Mailing") to 48 Class Members by first class mail, postage prepaid, forwarding service requested. [Settlement Administrator Report - ¶¶ 7-8]. As of February 24, 2018, a total of 7 notices from the Initial Mailing were returned as undeliverable with no forwarding address or further information provided by the United States Postal Service [Settlement Administrator Report - ¶9]. As of February 24, 2018, a total of 1 notice was returned by the U.S. Postal Service with a new address and remailed [Settlement Administrator Report - ¶10].

As of February 24, 2018, pursuant to the Settlement Administrator Report, the Settlement Administrator stated the following concerning its administration:

- Objections – no objections were received as of February 24, 2018

[Settlement Administrator Report - ¶11].

- Exclusions – no requests for exclusion were received as of February 24, 2018

[Settlement Administrator Report - ¶12]:

## II. STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

Courts consistently favor settlement of disputed claims. *See, Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536, 541 (7th Cir. 1975), *cert. denied*, 424 U.S. 965 (1976). Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

*See, Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir. 1981), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir. 1982) (law generally favors and encourages the settlement of class actions); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) *on reh'g, en banc, Secy of Labor v. Fitzsimmons,* 805 F.2d 682 (7th Cir. 1986); *Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir. 1976); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1990); *In re Dun & Bradstreet Credit Service Consumer Litigation,* 130 F.R.D. 366, 371 (S.D. Ohio 1990); *In re Domestic Air Transportation Antitrust Litigation,* 148 F.R.D.297, 312 (N.D. Ga. 1993) ("settlements of class actions are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").

In reviewing a proposed settlement, courts should neither substitute their own judgment for that of the parties who negotiated the settlement, nor "reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement." *Argo v. Harris,* 84 F.R.D. 646, 647-48 (E.D. N.Y. 1979); *see, also, Enterprise Energy, supra,* 137 F.R.D. at 246 (settlement must be viewed in its entirety and court may not modify individual terms which were the product of negotiations).

As stated by the court in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974):

> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement … Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick,* 698 F.2d 61,

74 (2d Cir. 1982). Courts have thus focused on whether the settlement was achieved through "arm's length negotiations" by counsel who have "the experience and ability … necessary to [provide] effective representation of the Class's interests." *Id.; see, also, Stotts v. Memphis Fire Department,* 679 F.2d 541, 551 (6th Cir. 1982); *Granada Investments, Inc. v. DWG Corp.,* 823 F.Supp. 448, 454 (N.D. Ohio 1993) (citing importance of arm's length negotiations); *In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 741 (S.D. N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

In deciding whether to approve the proposed settlement, this Court must determine whether the proposal is fair, adequate and reasonable. *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984); *Gautreaux v. Pierce,* 690 F.2d 616, 631 (7th Cir. 1982); *In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312. An assessment of the fairness, reasonableness and adequacy of a proposed settlement herein requires the court to weigh numerous factors. In this regard, it has been noted:

> It is well established that the court assumes a limited role when requested to approve a class action settlement proposal. While the interests of the class members must be carefully protected … the Court must avoid deciding or trying to decide the likely outcome of a trial on the merits. Approval or disapproval is dependent upon whether, under all of the particular circumstances, the terms reached are fair, reasonable and adequate.

*See, In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D. D.C. 1974) (citations omitted).

### III.  LEGAL ARGUMENT

#### A.  *Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B), Federal Rules of Civil Procedure and Constitutional Due Process Requirements*

*1.  The Form and Content of the Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to the Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant action, through the Preliminary Approval Order, the Court approved the form and content of the Class Notice appended to the Settlement Agreement as Exhibit "C" [DE 10]. The Class Notice informed the Class Members of the material terms of the settlement as well as the right of the Class Members to opt out, intervene or object to the Class Action Settlement. Accordingly, it is the position of Class Counsel that the content and form of the Notice to the members of the Class satisfies the requirements of Rule 23(c)(2)(B).

*2. The Best Notice Practicable Has Been Sent to the Members of the Class.*

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974).

Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985). As detailed in the Settlement Administrator Report, the Settlement Administrator followed its standard practice of processing the Class List through CASS and NCOA Services to obtain the best possible addresses for the Class Members prior to mail out [Settlement Administrator Report - ¶¶5-6].

Accordingly, in light of the modest settlement benefits, "the best notice practicable" has been made by the parties. This position is especially compelling as certain of the dunning letters which are the subject matter of this litigation may not have been received by members of the Class in the first place. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997) ["that some class members may not have received notice evidences only that the extensive notice system was not perfect.  Due process when viewed through the lens of objectivity does not require perfection"]; *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975) [in antitrust class action, notice adequate where one third of class not reached by mail].

### B.  The Proposed Settlement is Fair, Adequate and Reasonable

#### 1.  Federal Law Supports Approval of Class Action Settlement Agreements That Are Fair, Adequate and Reasonable

Judicial approval of class action settlements requires a two-step process.  In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval*."  H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37.  Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*.  The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

*In Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court for the Middle District of Florida described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  Miller v. Republic National Life Insurance Company, 559 F.2d 426 (5th Cir. 1977).  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable.  Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984).

*Id*. at 1054.

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court.  *Bennett*, 737 F. 2d at 987.  In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.  *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the negotiating process by which the settlement was reached.  *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983).  The courts insist that a settlement be the result of "arm's length negotiations" effected by counsel possessed of "experience and ability . . . necessary to effective representation of the class' interests."  *Id*. 698 F.2d at 74 (citation omitted).

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1) the likelihood of success or recovery;

(2) the range of possible recovery;

(3) the settlement terms and conditions, and how the terms compare with the possible range of discovery;

(4) the complexity, expense and duration of future litigation;

(5) the substance and amount of any opposition to the settlement;

(6) the stage of the proceedings at which settlement is reached;

>   (7) the recommendations and judgment of experienced counsel and the absence of collusion.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

### 2. *Even With a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages*

Although the Class Representative believes that the claims he has raised are meritorious, the Class Representative recognizes that ultimate success on the merits is by no means assured. During the initial part of this litigation, GARCIA PAEZ has made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Class Representative. GARCIA PAEZ has also contended and continues to contend that it has meritorious defenses to the asserted claims [Settlement Agreement - p. 2].

### 3. *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Members*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Class Representative. Under 15 U.S.C. §1692k(2)(B)(ii), the recovery of the Class is limited to the lessor of $500,000.00 or 1% of the net worth of the debt collector. Hence, the settlement benefits in FDCPA cases are often extremely modest.[1]

Each Class Member who has timely excluded himself or herself from the settlement ("Participating Class Member") will receive a Settlement Check in the amount of One Hundred Twenty-Five Dollars ($125.00) from the Settlement Administrator. The benefits to the Class are

---

[1] Through discovery, Defendant Garcia Paez, P.A. provided disclosures of net worth of $125,603.20.

within the range of recovery in similar class actions under the FDCPA. *See, e.g., Kemper v. Andreu, Palma & Andreu, PL*, 2016 WL 3545935 (S.D. Fla. June 23, 2016) [$10,720.00 settlement fund for class of 1,072 persons; $10.00 paid to each class member]; *Little-King v. Hayt, Hayt & Landau*, 2013 WL 4874349 (D. N.J. Sept. 10, 3013) [49,156 class members in an FDCPA claims-made class with $40,000.00 settlement fund]; *Oslan v. Law Offices of Mitchell W. Kay,* 232 F.Supp.2d 436 (E.D. Pa. 2002) [granting final approval of FDCPA class with settlement fund of $40,000.00 to be divided *pro rata* between 3,413 class members]; *cf., Bellows v. NCO Financial Systems, Inc.*, 2008 WL 5458986 (S.D. Cal. 2008); *Beecher v. Abel*, 441 F.Supp. 426, 429 (S.D. N.Y. 1977).

### 4. The Time and Expense of Protracted Litigation Makes Settlement Appropriate

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F.2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal). This position is especially compelling in light of the modest class size.

### 5. There is No Opposition to the Proposed Settlement

As noted above, the Settlement Class received notice of the proposed settlement by first class mail. In response to this notice program, no objections have been raised and no Class Members have opted-out. Based upon the unanimously favorable response to the proposed settlement, there exists no reason to delay final approval.

### 6. Class Counsel Has Conducted Due Diligence and Has Negotiated the Settlement From a Well-Informed Perspective

In the several months since this class action was initiated, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. The Class Representative has conducted formal and informal discovery, including the exchange of documentation relating to numerosity and the net worth of GARCIA PAEZ.

A lengthy mediation was successfully concluded with a written term sheet drawn up by counsel with the assistance of the mediator. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks.

### 7. Class Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312. In the instant action, Class Counsel has significant experience in litigating consumer class actions. *See*, *e.g.*, *Martinez v. FMS Inc.*, 2008 WL 4010101 (M.D. Fla. 2008); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D. Fla. 2003); *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp.2d 1273 (S.D. Fla. 2006); *Jansen v. West Palm Nissan, Inc.*, 2006 WL 1582068 (S.D. Fla. 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004); *e.g., Muro v. Hermano's Auto Wholesalers, Inc.*, 514 F.Supp.2d 1343 (S.D. Fla. 2007); *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006). At the final approval hearing, Class Counsel will inform the Court of settlements obtained in other FDCPA class actions similar to the instant proceeding. Judges should not substitute their own judgment as

to optimal settlement terms for the judgment of the litigants and their counsel. *See, Ressler v. Jacobson,* 822 F. Supp. 1551, 1553 (M.D. Fla. 1992).[2]

"While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247 (endorsement of settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods,* 546 F.Supp. 1, 11 (N.D. Ohio 1982) (opinion of counsel to be given great weight by the Court). Indeed, there is a "strong initial presumption" that an arm's length settlement arrived at by experienced counsel, and premised upon sufficient information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D. N.Y.1972).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conduct by counsel experienced in all aspects of class action litigation, and particularly experienced in the FDCPA context. As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial.

---

[2] The Court must also avoid judging the settlement against a hypothetical or speculative measure of what might have been achieved by the negotiators. "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of facts and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." *See, Officers for Justice v. Civil Serv.Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

Thus, in counsels' view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class.

By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation. Upon final approval, if given, the proposed settlement will have established a significantly faster and guaranteed favorable resolution of Settlement Class members' claims against GARCIA PAEZ.

        *8.  The Parties Negotiated the Proposed Settlement in Good Faith*

This lawsuit has been pending for over a year. The proposed settlement was negotiated at arm's length after several weeks before the final terms of the Settlement Agreement were reached. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310.

## IV.  CONCLUSION

For all the foregoing reasons, Plaintiff, Sharon D. Pepper, on behalf of herself and all others similarly situated, respectfully requests that this Court approve the settlement as fair, adequate and reasonable.

        */s/ Robert W. Murphy*
        Robert W. Murphy
        Florida Bar No. 717223
        1212 S.E. 2nd Avenue
        Fort Lauderdale, Florida 33316
        Telephone: (954) 763-8660
        Fax: (954) 763-8607
        E-mail: rphyu@aol.com;
        rwmurphy@lawfirmmurphy.com
        *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel for Defendants, Robert M. Klein, Esquire, and Richard M. Jones, Esquire, Klein Glasser Park & Lowe, P.L., 9130 South Dadeland Boulevard, Suite 2000, Miami, Florida 33156, at lowej@kgplp.com; kleinr@kgplp.com; jonesr@kgplp.com.

                                          /s/ *Robert W. Murphy*
                                          Attorney